FRANCES A. FOX v. J. BRADLEY WILSON, SAM ERBY, JR., AND CARPENTER, BOST, WILSON AND CANNON, P.A., A PROFESSIONAL COR-PORATION

No. 8625SC924

(Filed 21 April 1987)

1. **Appeal and Error § 6.2— dismissal of one count of complaint—right of immediate appeal**

     The trial court's dismissal of the second count in plaintiff's amended complaint, resulting in the dismissal of plaintiff's claim against defendant professional corporation, affects a substantial right of plaintiff to have determined in a single proceeding the issues of whether she has been damaged by the actions of one, some or all defendants and is thus immediately appealable. N.C.G.S. 1-277 and 7A-27(d).

2. **Attorneys at Law § 5.2— constructive fraud—legal malpractice—erroneous dismissal of allegations**

     The trial court erred in dismissing the second count of plaintiff's complaint since the allegations therein, although in large measure repetitive of the first count with respect to defendant attorney, were relevant to plaintiff's claim against defendant attorney for constructive fraud in plaintiff's transfer of a newspaper to a corporation owned by defendant attorney and the other individual defendant and stated a claim for relief for legal malpractice against defendant attorney.

3. **Attorneys at Law § 5.2— attorney fraud—liability of professional corporation—sufficiency of complaint**

     The second count of plaintiff's amended complaint stated a claim for relief against defendant professional corporation for acts committed by defendant attorney where it alleged that defendant attorney and another member of defendant professional corporation undertook to represent her with respect to the sale and reacquisition of a newspaper; at all relevant times they were act-

ing within the course and scope of their capacity as "agents, officers and employees" of defendant professional corporation; and at the direction of defendant attorney, the other member of the corporation prepared documents by which the newspaper was fraudulently transferred by plaintiff to a corporation owned by defendant attorney and the other individual defendant.

**4. Conspiracy § 2— civil conspiracy—action for damages—sufficiency of complaint**

   Plaintiff's amended complaint was sufficient to allege a claim for damages caused by acts committed pursuant to a conspiracy, and the trial court erred in dismissing the claim and striking the allegations of conspiracy from the complaint, where plaintiff alleged that the two individual defendants conspired to defraud her in order to obtain ownership of a newspaper, and plaintiff also alleged specified overt acts committed by each defendant by which plaintiff was defrauded and damaged.

APPEAL by plaintiff from *Downs, Judge.* Order entered 30 June 1986 in Superior Court, CALDWELL County. Heard in the Court of Appeals 3 February 1987.

Plaintiff brought this civil action alleging fraud on the part of defendants Erby and Wilson, and legal malpractice on the part of defendant Wilson and defendant professional corporation. Defendants moved to dismiss the complaint pursuant to G.S. 1A-1, Rule 12(b)(6). The trial court dismissed the complaint, but granted plaintiff leave to file an amended complaint.

Within the time specified in the trial court's order, plaintiff filed an amended complaint containing two counts. In Count I of the amended complaint, plaintiff alleged that she and her late husband had owned and operated *The Granite Falls Press*, a newspaper in Granite Falls, N.C. She alleged that after her husband's death in 1982, she and defendant Erby entered into a relationship of trust and confidence in that defendant Erby advised her in connection with her husband's estate and the operation of the newspaper, and assisted her in arranging an eventual sale of *The Granite Falls Press* to a third party in February, 1984. Plaintiff alleged that because of the confidential relationship, defendant Erby knew that she had accepted a note and a security agreement from the purchaser of the newspaper and that he conspired with defendant Wilson to take advantage of that relationship in order that the two of them might acquire ownership of the newspaper for themselves. Count I of the amended complaint included the following allegations:

6. Defendants Erby and Wilson conspired to defraud Plaintiff and did defraud her in the following manner:

(a) Around the first of January, 1985, Defendant Erby went to Plaintiff's home and told her that the owner of the newspaper was going to file in bankruptcy. Defendant Erby told Plaintiff that he and his partner, Defendant Wilson, wanted to buy the newspaper and that Plaintiff should repossess the newspaper assets and sell to Defendants Erby and Wilson. Defendant Erby told Plaintiff that he and Defendant Wilson would "take care of her." Plaintiff did not agree to sell the newspaper to Defendants Erby and Wilson.

(b) Around the first of February, 1985, Defendants Erby and Wilson went to Plaintiff's house. Defendant Wilson told Plaintiff that the owner of The Granite Falls Press was going to file in bankruptcy; that the only way to save the newspaper was to catch the newspaper owner in default and to repossess the newspaper and its assets. At this meeting, and also at various later times, both Defendants Erby and Wilson told Plaintiff that Defendant Wilson and his associate, Bruce Lee Cannon, would represent Plaintiff as her attorney in repossessing the newspaper and its assets; Defendant Wilson also told Plaintiff that if she ever needed to talk with him and he was not available, then she should talk with Bruce Lee Cannon.

(c) Later in February, 1985, Defendant Erby and/or Wilson went to Plaintiff's post office box, took out the check from the owner of the newspaper payable to Plaintiff, for the February installment payment on the above described promissory note, and took the check to Plaintiff's house. Defendant Wilson told Plaintiff that he had checked with the bankruptcy court and that the newspaper owner had, in fact, filed in bankruptcy. Defendant Wilson also told Plaintiff that he had checked with the bank and that the check which he had taken from Plaintiff's post office box was not good. Defendant Wilson had prepared a letter to the owner of the newspaper declaring default on the promissory note; declaring the entire balance of the promissory note due and payable immediately; stating further that Plaintiff would be happy to discuss the transfer of the newspaper and its assets back to Plaintiff in

complete satisfaction of all sums due to Plaintiff pursuant to the promissory note; and requesting that all communications be directed to Bruce Cannon, who was identified as being Plaintiff's attorney. Defendant Wilson prevailed upon Plaintiff to sign said letter, and Defendant Wilson or Defendant Erby did, in fact, mail said letter to the newspaper owner.

(d) Defendants Erby and Wilson both told Plaintiff repeatedly not to worry, that they would take care of her, and that she would get her money.

(e) Unbeknownst to Plaintiff, Defendants Erby and Wilson formed a partnership named "SKAN Enterprises," consisting solely of Defendants Erby and Wilson, for the purpose of holding title to and possession of The Granite Falls Press.

(f) In February and March of 1985, Defendants Erby and Wilson negotiated the transfer of The Granite Falls Press and its assets from The Granite Falls Press, Inc., to Plaintiff.

(g) Defendant Wilson prepared or directed his associate, Bruce Lee Cannon, to prepare documentation to transfer The Granite Falls Press and its assets first to Plaintiff and then from Plaintiff to SKAN Enterprises.

(h) On March 8, 1985, Bruce Lee Cannon, at the direction of Defendants Erby and Wilson, conducted a closing at which The Granite Falls Press and all of its assets were transferred to Plaintiff. Immediately after the newspaper and its assets were transferred to Plaintiff, Bruce Lee Cannon, at the direction of Defendants Erby and Wilson, procured Plaintiff to sign a document which purported to transfer The Granite Falls Press and its assets to SKAN Enterprises.

(i) At all times from January of 1985, through and including March 8, 1985, Defendants Erby and Wilson knew that Plaintiff was owed approximately $173,000.00 pursuant to the above described promissory note, and that Plaintiff had received each and every installment which was due to her pursuant to said promissory note.

(j) When Defendants Erby and Wilson procured Plaintiff to sign the above described default letter, they knew that the then owner of the newspaper was not in default pursuant to

the terms of the promissory note; that the owner of the newspaper had not filed in bankruptcy; and that the check for Plaintiff's February, 1985, installment payment was good.

(k) At various times from January of 1985 through March 8, 1985, Defendants Erby and Wilson knowingly and willfully misrepresented to Plaintiff the financial status of the then owner of The Granite Falls Press for the purpose of arranging for Plaintiff to reacquire The Granite Falls Press and its assets so that Defendants Erby and Wilson could then acquire the newspaper and its assets from Plaintiff.

(l) Defendants Erby and Wilson knowingly and intentionally took advantage of Plaintiff's trust and confidence in Defendant Erby and her trust in Defendant Wilson as Plaintiff's attorney to obtain Plaintiff's signature on the document by which Plaintiff purportedly conveyed The Granite Falls Press and its assets to SKAN Enterprises.

(m) Defendants Erby and Wilson did not explain to Plaintiff the legal significance of the document which purports to transfer The Granite Falls Press and its assets to SKAN Enterprises; Defendants Erby and Wilson knew that Plaintiff would not have signed said document had Plaintiff known the contents and legal significance of the document; and Defendants Erby and Wilson took advantage of Plaintiff's trust in them to obtain Plaintiff's signature on said document without knowing the contents or the legal significance of said document. Plaintiff received the sum of $1,000.00 from Defendants Erby and Wilson in consideration of the transfer of The Granite Falls Press and its assets to SKAN Enterprises.

(n) Prior to the acts of Defendants Erby and Wilson described above, Plaintiff held a promissory note worth approximately $173,000.00 secured by The Granite Falls Press and all of its assets. Now, and as a result of Defendants' acts described above, Plaintiff has nothing.

She alleged that defendant Erby's actions amounted to actual fraud, constructive fraud, and a civil conspiracy to commit fraud.

In Count II of the amended complaint, plaintiff alleged that defendant Wilson and another attorney, who was also an officer and employee of defendant professional corporation, undertook to

represent her in February, 1985, in reacquiring the assets of the newspaper and that a confidential relationship therefore existed between her and defendant Wilson. She incorporated by reference the allegations of Paragraph 6 of Count I and asserted that defendant Wilson's actions amounted to actual and constructive fraud and a civil conspiracy to commit fraud. She also alleged that his acts amounted to legal malpractice. Finally, she alleged that defendant Wilson was acting within the course and scope of his employment with defendant professional corporation, rendering the corporation liable for his acts.

All defendants moved, pursuant to G.S. 1A-1, Rule 12(b)(6), to dismiss the amended complaint. The trial court dismissed Count II of the amended complaint, dismissed the action as against defendant professional corporation, dismissed plaintiff's claim for relief based upon "civil conspiracy," and struck from the complaint those portions which alleged that defendants Erby and Wilson had "conspired" or which referred to a "civil conspiracy." Plaintiff appeals.

*Wilson and Palmer, P.A., by W. C. Palmer, for plaintiff appellant.*

*Sigmon, Clark and Mackie, by Jeffrey T. Mackie, for defendant appellee, Sam Erby, Jr.*

*Patton, Starnes, Thompson & Aycock, P.A., by Thomas M. Starnes, for defendants appellees, J. Bradley Wilson and Carpenter, Bost, Wilson and Cannon, P.A.*

MARTIN, Judge.

[1]  The order of the trial court did not dismiss Count I of the amended complaint and thus did not adjudicate all of the claims or the rights and liabilities of all of the parties. The order dismissing Count II did not contain a certification that "there is no just reason for delay" as required by G.S. 1A-1, Rule 54(b) for entry of a final judgment where fewer than all of the claims or parties are disposed of. Therefore the order is interlocutory and we must determine the threshold issue of whether plaintiff's present appeal is premature.

Although it is the general rule that no appeal lies from an interlocutory order, G.S. 1-277 and G.S. 7A-27(d) permit an im-

mediate appeal from an interlocutory order which affects a substantial right. *Newton v. Standard Fire Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976); *Oestreicher v. American National Stores, Inc.*, 290 N.C. 118, 225 S.E. 2d 797 (1976). We hold that the dismissal of Count II of the amended complaint, resulting in dismissal of plaintiff's claim against defendant professional corporation, affects a substantial right to have determined in a single proceeding the issues of whether she has been damaged by the actions of one, some or all defendants, especially since her claims against all of them arise upon the same series of transactions. *See Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405 (1982); *Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E. 2d 354, *disc. rev. denied*, 311 N.C. 758, 321 S.E. 2d 136 (1984). The appeal is not premature.

[2] Plaintiff seeks reversal of the order dismissing Count II of her amended complaint. She contends first that the allegations of Count II are sufficient to state claims for relief against defendant Wilson for fraud, both actual and constructive, and for legal malpractice. She also contends that Count II is sufficient to state a claim, based on the doctrine of *respondeat superior*, against defendant professional corporation. Defendants argue, however, that, as to defendant Wilson, the allegations of Count II are mere surplusage because the allegations of Count I are sufficient to allege claims for actual and constructive fraud against him. They contend further that dismissal of the claim against defendant professional corporation was appropriate because the amended complaint makes clear that any alleged wrongdoing on the part of defendant Wilson was not committed in his capacity as an agent or employee of the firm.

In order to withstand a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must make allegations sufficient to satisfy the substantive elements of at least some recognized claim. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979); *Hewes v. Johnston*, 61 N.C. App. 603, 301 S.E. 2d 120 (1983). In considering the motion, the allegations contained within the complaint must be treated as true. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282, 79 A.L.R. 3d 651 (1976). "[A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in*

*support of the claim." Sutton v. Duke,* 277 N.C. 94, 103, 176 S.E. 2d 161, 166 (1970) (emphasis original).

While the allegations of Count II of the amended complaint are, in large measure, repetitive of Count I with respect to defendant Wilson, some new allegations appear. For example, plaintiff alleges in Count II that Wilson entered into an attorney-client relationship with her in February, 1985, and that the very transaction in which she claims she was defrauded occurred during the pendency of that relationship. In order to establish a claim for constructive fraud, a plaintiff must allege facts sufficient to show the creation of a relationship of trust and confidence and that the defendant took advantage of that relationship to plaintiff's detriment. *Terry v. Terry,* 302 N.C. 77, 273 S.E. 2d 674 (1981). A relationship of trust and confidence "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). It has long been recognized that the relationship of attorney and client creates such a relationship of trust and confidence. *See Egerton v. Logan,* 81 N.C. 172 (1879); *Lee v. Pearce,* 68 N.C. 76 (1873); *Stilwell v. Walden* 70 N.C. App. 543, 320 S.E. 2d 329 (1984). The allegations of Count II are therefore relevant to plaintiff's claim against defendant Wilson for constructive fraud.

Plaintiff also sought to predicate her claim for legal malpractice upon the allegations of Count II that defendant Wilson, while acting as her attorney, took advantage of the relationship to his own benefit and that of defendant Erby. An attorney "is answerable in damages for any loss to his client which proximately results from . . . the failure to exercise in good faith his best judgment in attending to the litigation committed to his care." *Hodges v. Carter,* 239 N.C. 517, 520, 80 S.E. 2d 144, 146, 45 A.L.R. 2d 1, 4 (1954). "[A]n attorney who makes fraudulent misstatements of fact or law to his client, or who fails to impart to his client information as to matters of fact and the legal consequences of those facts, is liable for any resulting damages which his client sustains." 7 Am. Jur. 2d, Attorneys At Law § 215, at 258 (1980). Taking the allegations of Count II of the amended complaint as true, which we must do at this stage in the litigation, *Smith v.*

*Ford Motor Co., supra,* we hold that plaintiff has adequately stated a claim for relief for legal malpractice as against defendant Wilson.

[3] Plaintiff also contends that Count II of the amended complaint was sufficient to state a claim for relief against defendant professional corporation for the acts committed by defendant Wilson. We agree. Plaintiff alleged that defendant Wilson and another attorney who was an officer and employee of the professional corporation undertook to represent her with respect to the newspaper, and that at all relevant times they were acting within the course and scope of their capacities as "agents, officers and employees" of the professional corporation. She alleged that, at Wilson's direction, the other attorney prepared documents by which the alleged fraudulent transfer occurred and procured her signature thereon.

Our Supreme Court has held that a professional corporation may be held liable for the misconduct of one of its officers where the officer is apparently acting within the scope of his authority and as agent for the corporation. *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E. 2d 795 (1974). Liberally construed, the complaint sufficiently alleges that Wilson was acting within the course and scope of his employment and with the knowledge of at least one other officer of the corporation. No insurmountable bar to recovery against the corporation appears on the face of the complaint and plaintiff's claim against it was, therefore, erroneously dismissed. *Snug Harbor Property Owners Association v. Curran,* 55 N.C. App. 199, 284 S.E. 2d 752 (1981), *disc. rev. denied,* 305 N.C. 302, 291 S.E. 2d 151 (1982).

For the foregoing reasons, we hold that it was error to dismiss Count II of plaintiff's amended complaint. It was also error to dismiss plaintiff's claim against defendant professional corporation and to discharge the corporation as a party defendant to the suit.

[4] Plaintiff also contends that the trial court erred by dismissing her "claim of civil conspiracy as alleged in the Amended Complaint." Although plaintiff has labeled her action as one for "civil conspiracy," there is actually no such thing as an action for civil conspiracy. *Evans v. Star GMC Sales and Service, Inc.,* 268 N.C. 544, 151 S.E. 2d 69 (1966). Our Supreme Court has stated:

[a]ccurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof — the damage — not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable.

*Reid v. Holden*, 242 N.C. 408, 414-15, 88 S.E. 2d 125, 130 (1955) *quoting* 11 Am. Jur., Conspiracy, § 45. "In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts. The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all." *Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E. 2d 771, 773-74 (1966).

A claim for damages resulting from a conspiracy exists where there is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, and, as a result of acts done in furtherance of, and pursuant to, the agreement, damage occurs to the plaintiff. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981); *Burton v. Dixon*, 259 N.C. 473, 131 S.E. 2d 27 (1963). In such a case, all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement. *Burton, supra.*

In the present case, plaintiff has alleged that defendants Erby and Wilson conspired to defraud her in order to obtain ownership of the newspaper. She has also alleged that each of them committed certain specific overt acts by which she was defrauded and, as a result of which, she was damaged. These allegations are sufficient to allege a claim for damages caused by acts committed pursuant to a conspiracy. *See Burton, supra.* It was error for the trial court to dismiss the claim and strike the allegations of conspiracy from the amended complaint.

The order appealed from is reversed and this cause is remanded to the Superior Court, Caldwell County for further proceedings.

Reversed and remanded.

Judges PARKER and COZORT concur.